**Carrier v. Shearer**

*Jay R. Braderman* and *I. B. Sinclair*, for plaintiffs.

*Arthur K. Dils, Carl G. Wass* and *Robert C. Jubelirer*, for defendants.

WICKERSHAM, J., May 31, 1972.—

## ADJUDICATION

## STATEMENT OF THE ISSUES

In November of 1971, Gary D. Carrier, a member of the Young Republicans of Pennsylvania and other members joined as plaintiffs in an action in equity against Don Paul Shearer, the elected Chairman of the Young Republicans of Pennsylvania and against the Young Republicans of Pennsylvania as defendants, seeking, inter alia, the removal of Don Paul Shearer as Chairman of the Young Republicans of Pennsylvania, the prohibition against him for holding any office in said organization for a period of three years and such other relief as the court might deem appropriate. The main thrust of the complaint was that defendant Don Paul Shearer (hereinafter Shearer) while acting as Chairman of the Young Republicans of Pennsylvania (hereinafter YRP) acted improperly in the issuance of certain checks drawn on the account of YRP, converted funds of the YRP to his own use and to the use of other persons, failed to submit proper itemization of expenses and disbursements of YRP funds and acted improperly in the calling of meetings of the YRP, manipulated votes and otherwise improperly conducted himself as chairman contrary to the constitution and bylaws of the YRP.[1]

---

[1] Following the filing of the original complaint and service thereof, an appearance was entered on behalf of defendant Shearer and YRP and preliminary objections were filed to the original complaint by defendants. Thereafter, an amended complaint was filed on December 30, 1971, and preliminary objections were filed

On March 28, 1972, a conference was held, attended by counsel for plaintiff, counsel for defendant Shearer and defendant YRP and a hearing was scheduled on the various matters raised by the pleadings for May 9, 1972.[2] At the hearing held May 9, 1972, the chancellor opened the judgment by default taken against defendant Shearer following the receipt of testimony on the petition to open judgment and directed that plaintiffs proceed with evidence in support of their amended complaint subject to a full defense by both defendants.

At the May 9, 1972, hearing, the preliminary objections to the amended complaint filed on behalf of YRP were all overruled except for the objection to lack of

---

to the amended complaint by YRP alleging, inter alia, that the amended complaint failed to state any cause of action against defendant YRP, that the relief claimed was improper as a matter of law, that plaintiffs had an adequate, full and complete remedy at law, that plaintiffs had failed to pursue the legal remedies including those afforded by the constitution and bylaws of the corporation and that the relief claimed was improper as a matter of law and no relief properly cognizable in equity was requested; further that the court lacked jurisdiction of the subject matter of the action.

[2] Following the filing of the amended complaint by plaintiff Carrier et al., an agreement between counsel for defendant Shearer and counsel for plaintiffs was entered into relating to an extension of time for responding to said amended complaint, which agreement was apparently not clearly understood by all parties as a result of which a praecipe was filed to enter judgment by default on March 17, 1972, and the prothonotary entered default against defendant Shearer for failure to plead to the amended complaint. Thereafter a motion for entry of final decree upon default was filed by plaintiff's counsel, followed by a petition to open judgment filed by counsel for defendant Shearer and an answer thereto. In the answer counsel for plaintiff admitted that "reasonable extensions" had been granted to defendant Shearer for responding to the amended complaint.

jurisdiction of the court of the subject matter of the action and a decision thereon was reserved by the chancellor. The chancellor deemed it unnecessary to delay matters further and directed that neither defendant Shearer nor defendant YRP need file a formal answer to the amended complaint, under the circumstances and evidence was taken forthwith in support of plaintiffs' amended complaint.

## STATEMENT OF THE FACTS

1. The various plaintiffs in the action are members of the Young Republicans of Pennsylvania (hereinafter YRP).

2. Defendant Don Paul Shearer (hereinafter Shearer) is an adult individual residing at R. D. 1, Lewisberry, York County, Pa. and is the elected chairman of YRP.

3. YRP is a nonprofit corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business at 112 State Street, Harrisburg, Dauphin County, Pa.

4. YRP at all times relevant to this action was governed and controlled by a constitution and bylaws adopted April 3, 1965, as amended, a copy of which bylaws is attached to the amended complaint marked "plaintiffs' exhibit 16" at the hearing of May 9, 1972.

5. Under the bylaws of the YRP, article VI, Elections, sec. 2, all officers shall be elected at the biennial convention by a majority vote and open ballot.

6. At the biennial convention held in the summer of 1970, defendant Shearer was duly elected as chairman of the YRP by a one-vote majority in open ballot as provided by the bylaws of YRP.[3]

---

[3] Under the bylaws of the YRP, article IV, Officers, sec. 1, it provides:

"CHAIRMAN: The Chairman shall preside at all meetings of the

7. The term of office as chairman of defendant Shearer continues until July 1972 at the biennial convention scheduled for Cumberland County, Pa., July 20-22, 1972.[4]

8. The bylaws provide for an executive committee (article V, sec. 1, Membership) including the chairman, other elected officers and appointed officials which executive committee meets bimonthly.[5]

9. Under the bylaws of YRP, the general supervision of the affairs of the YRP shall be vested in the Young Republican State Committee, article III, Young Republican State Committee, sec. 3.

10. The Young Republican State Committee is composed of representatives of each county unit, all members of the executive committee and others as provided by article III of the bylaws, Young Republican State Committee, sec. 1, Membership.

11. The bylaws provide in article IX for rules of procedure whereby the procedure for the organization shall be governed by the constitution, by the bylaws

---

Young Republicans. The Chairman shall make all appointments subject to the approval of the Executive Committee. He shall be a member ex-officio of all committees except the Nominating Committee. The Chairman shall supervise all activities of the Young Republicans and perform all other duties incidental to his office. The chairman shall have the right and duty to issue statements on current affairs and other political matters so long as they are not in conflict with article II, sec. V, of the Constitution."

[4] The bylaws provide further, Article IV, Officers, sec. 16, that no person other than a director-at-large shall be eligible to succeed himself in any elective office.

[5] The bylaws, Article V, Executive Committee, sec. 4, entitled Powers provides:

"The Executive Committee shall direct Young Republican activities in Pennsylvania. It shall advise the Chairman and the officers in the execution of their duties. It shall also have such powers as may be delegated to it by the State Committee and the State Convention."

duly promulgated and by the current edition of Roberts Rules of Order (Revised) and, further, that in all voting, the majority shall rule unless otherwise provided in the constitution and bylaws or the current edition of Roberts Rules of Order (Revised).

12. The bylaws further provide that the treasurer of the organization shall collect, receive, deposit and have custody of all funds of the YRP and shall make disbursements as approved by the chairman.[6]

13. At the hearing held May 9, 1972, before the chancellor, plaintiff called as a witness in support of the allegations of the amended complaint one Jay R. Bair, the elected treasurer of YRP. In substance, he testified that he disbursed funds of YRP as directed and approved by the chairman, Shearer, and as provided by the bylaws referred to hereinabove and further that he rendered accounts or treasurer's reports on all financial transactions involving YRP to the executive committee of the YRP from time to time and received approval of said treasurer's accounts or reports.

14. Witness Bair, throughout his testimony, indicated dissatisfaction or displeasure or nonapproval

---

[6] Article IV, Officers, sec. 7, Treasurer provides:

"The Treasurer shall be responsible for developing ways and means for the financing of the programs and operations of the Young Republicans. He shall collect, receive, deposit and have custody of all funds of the Young Republicans and shall make disbursements as approved by the Chairman. He shall deposit all funds in a depository approved by the Executive Committee, and shall keep the accounts of the Young Republicans in books provided for that purpose in which shall be entered in detail all receipts and disbursements. The Treasurer shall render accounts of all his transactions and of the financial condition of the Young Republicans. An audit of Young Republican books shall be made at the end of each Treasurer's term in office and the auditor shall report to the Executive Committee."

of the expenditures of chairman Shearer during the Shearer administration but indicated that he issued drafts on the YRP account as directed by chairman Shearer in view of the wording of the bylaws of YRP and in further view of express directions to that end conveyed to him by the executive committee of YRP.

15. Patricia L. Saylor testified on behalf of plaintiffs in support of the allegations of the amended complaint, she being the elected vice chairman of YRP.

16. The substance of her testimony was to the effect that she has attended all of the YRP State Committee meetings and all YRP Executive Committee meetings during the Shearer administration and that all treasurer's accounts or reports filed by treasurer Bair had indeed been approved by the executive commitee of the YRP, including the reflection of all expenditures and disbursements directed by chairman Shearer, but that approval had been withheld by the executive committee of disbursements and expenditures relating to the Young Republican National Convention held June 21-25, 1971, in Phoenix, Ariz., and that the executive committee of YRP was still awaiting further explanatory and detailed financial reports from chairman Shearer in that connection.

She testified further that the executive committee of YRP had never had knowledge of, nor had taken, any action to approve an account opened by chairman Shearer at Dauphin Deposit Trust Company, Harrisburg, Pa., account 63-776820, entitled the 1971 YR Convention Fund and apparently related to the 1971 Phoenix, Ariz., Young Republican National Convention.

Miss Saylor testified further that chairman Shearer had improperly called meetings, had called meetings without adequate notice, had allowed persons to vote at meetings who were not authorized and entitled to

vote and otherwise had misconducted himself in his office as chairman.

17. Certain other plaintiffs were called and testified, including Richard E. Anderson, Thomas G. Bradley and Suzanne Nemetz, which testimony was largely corroborative of that of Miss Saylor.

18. Don Paul Shearer testified on his own behalf and identified all of the plaintiffs as a dissident group of the YRP who had opposed his election as chairman and who, following his election as chairman, opposed his choice as executive secretary and opposed his choice as legal counsel for the YRP and had otherwise hindered and obstructed his administration.

Defendant Shearer testified that no action had ever been formally taken against him within the organization of the YRP to challenge his office or in an attempt to remove him from office other than the instant action in equity.

19. Defendant Shearer testified that he had submitted financial accounting relating to the 1971 Phoenix, Ariz., convention of the National Young Republicans and that he had expended personal funds well in excess of any reimbursement moneys received from the accounts of YRP.

## QUESTIONS OF LAW INVOLVED
## AND CONCLUSIONS OF LAW

It has been said that:

"Our courts have no equity jurisdiction except that conferred by the Constitution and by statutes, and they have only such equitable powers as are conferred by statute. Consequently it is established that the equity jurisdiction of our courts is limited, and the person asserting the jurisdiction must point to the statute giving it": P.L.E. Vol. 13, p. 423, Equity—Jurisdiction.

For statutory authority on the issue of equitable jurisdiction in the instant case, plaintiffs point to the Pennsylvania Nonprofit Corporation Law of May 5, 1933, P. L. 289, art. I, sec. 1, 15 PS §7001, et seq.[7]

Plaintiffs point to the provisions of the Pennsylvania Nonprofit Corporation Law which empower the court under appropriate circumstances to remove directors of a nonprofit corporation.[8] The executive committee of the YRP, being empowered to direct Young Republican activities in Pennsylvania and further empowered to advise the chairman and the officers in the execution of their duties in addition to the exercise of such powers as may be delegated to it by the State Committee and the State Convention most nearly fits the legislative definition of director of a nonprofit corporation. Even if, however, we construe the Young Republican State Committee, as pro-

---

[7] "§7505. Removal of officers and agents. Unless the articles or by-laws otherwise provide, any officer or agent may be removed by the board of directors whenever in its judgment the best interests of the corporation will be served thereby, but such removal shall be without prejudice to the contract rights of any person so removed. 1933, May 5, P.L. 289, art. V, §505; 1935, July 17, P.L. 1130, §1."

"§7506. Relation of directors and officers to corporation. Officers and directors shall be deemed to stand in a fiduciary relation to the corporation, and shall discharge the duties of their respective positions in good faith and with that diligence, care and skill which ordinary prudent men would exercise under similar circumstances in their personal business affairs. 1933, May 5, P.L. 289, art. V. §506."

[8] A director is defined to mean persons designated in the articles of incorporation as such and persons designated, elected or appointed, by any other name or title, to act as directors, and their successors. The term, when used in relation to any power or duty requiring collective action, shall be construed to mean board of directors: 15 PS §7002(5).

vided for in article III of the bylaws, to be in fact the board of directors, our result is no different.[9]

Returning to the Pennsylvania Nonprofit Corporation Law, plaintiffs point to the provisions of section 503C which provide:

"Unless the articles or by-laws otherwise provide, the court of common pleas of the county where the registered office of the corporation is located may, at the suit of five or more members, remove from office any director or directors in case of fraudulent or dishonest acts, or gross abuse of authority or discretion, with reference to the corporation, and may bar from reelection any director so removed for a period prescribed by the court. The corporation shall be made a party to such actions": Act of May 5, 1933, P. L. 289, art. V, sec. 503, 15 PS §7503C.

In Milasinovich v. The Serbian Progressive Club, Inc., 369 Pa. 26, (1951), Justice Stearne, speaking for the Supreme Court of Pennsylvania, said:

"It is true that a court in equity has no jurisdiction, in the absence of a statute, merely to declare an election void or to remove or enjoin officers. But it possesses such jurisdiction if some other ground of equitable jurisdiction is presented: Jenkins et al. v. Baxter et al., 160 Pa. 199, 28 A. 682; Bedford Springs Co. v. McMeen et al., 161 Pa. 639, 29 A. 99; Deal v. Miller, 245 Pa. 1, 90 A. 1070. For an ordinary corporate election contest there exists an adequate remedy at law, viz.: *quo warranto* or *mandamus*. In the case now before us the injunction and the appointment of a receiver was necessary and appropriate upon the allegations and proof of fraud, waste and misapplica-

---

[9] The general supervision of the affairs of the Young Republicans of Pennsylvania are vested in the Young Republican State Committee by virtue of article III, sec. 3, of the bylaws of YRP.

tion of assets. In Jenkins et al. v. Baxter et al., supra, p. 201, it is recited that there was no allegation of fraud or force. In Deal v. Miller, supra, p. 3, we said: 'There is no averment that the defendants are seeking to get possession of the property of the corporation with a view to its mismanagement or to waste it or in any way to control it to the prejudice of the stockholders of the company.' See also sec. 367 et seq. Fletcher Cyclopedia Corporations, p. 132 and the numerous cases therein cited.

"In addition to a court's general equity jurisdiction, a partial statutory remedy has been provided by the Legislature. Sec. 503(c) of the Act of May 5, 1933 P. L. 289, art. V, 15 PS 2851-503, provides: 'Unless the articles or by-laws otherwise provide, the court of common pleas of the county where the registered office of the corporation is located may, at the suit of five or more members, remove from office any director or directors in case of fraudulent or dishonest acts, or gross abuse of authority or discretion, with reference to the corporation, and may bar from reelection any director so removed for a period prescribed by the court. The corporation shall be made a party to such actions.' "

In the same manner, see Markovitz v. Markovitz, 336 Pa. 145 (1939), wherein it was said:

"Prior to the enactment of the Business Corporation Law, the power to remove a director from office for reasonable and just cause before the expiration of the term for which he was elected could be exercised only within the corporate structure by the body authorized to appoint or elect directors, generally the shareholders. Courts of equity in this state had no jurisdiction to remove an officer of a private corporation, or to restrain him from carrying on the functions of his office: Whyte v. Faust, 281 Pa. 444;

Cella v. Davidson, 304 Pa. 389; 4 Cook on Corporations, 8th ed. (1923), p. 3265; Fletcher, Cyclopedia Corporations, Vol. 2, sec. 358.

"This lack of power has been remedied by the inclusion in the present law of Section 405(c) under which this proceeding was brought. By the terms of this section, the court of common pleas of the proper county at the suit of a shareholder holding the requisite number of shares may now remove a director from office for any of the causes enumerated therein, and prohibit his re-election for a period of time to be prescribed by the court.

"Here the defendant under the power conferred upon him as a director of the corporation unquestionably harassed his fellow officers and employees in the transaction of the company's business. The court below has characterized his conduct as that of a 'maliciously mischievous and irresponsible boy.' That his course of conduct was deliberate and intentional is apparent from the record as well as from his own admission.

"While undoubtedly friction and animosity of a personal nature were present in the relations between the parties, aside from the indignities suffered by other officers at the hands of defendant, there was the serious harm which he caused to the corporation by his unreasonable and unjustifiable abuse of the authority he possessed. As a director he was under a duty and responsibility to discharge the functions of his office with fidelity to the best interests of the corporation and its shareholders, for whom he was a trustee. It was his duty to cooperate with the other officers of the corporation, that its business might prosper, and not to thwart and obstruct them in the performance of their duties, particularly where they had achieved an excellent record in the management

of the company. As said by the Chancellor: '. . . when an inexperienced and comparatively imcompetent director embarks upon a course of conduct such as has above been described, he is guilty of "gross abuse of authority or discretion with reference to the corporation" and should be removed from office for a substantial period.' In our opinion this conclusion is supported by the evidence and must be sustained."

The difficulty with plaintiffs' position becomes instantly obvious. Plaintiffs in their amended complaint seek to remove Don Paul Shearer as chairman of the Young Republicans of Pennsylvania. This, of course, is his capacity as an officer of the nonprofit corporation as distinguished from his position on the executive committee which automatically makes him a member of the Young Republican State Committee. As pointed out hereinabove, the Young Republican State Committee is, in practical effect, the board of directors and this is the group that would have to take the action to remove defendant Shearer as chairman of the YRP. See section 505 of the Nonprofit Corporation Law entitled "Removal of officers and agents" which provides:

"Unless the articles or by-laws otherwise provide, any officer or agent may be removed by the board of directors whenever in its judgment the best interests of the corporation will be served thereby, but such removal shall be without prejudice to the contract rights of any person so removed": May 5, 1933, P.L. 289 art. V, sec. 505; July 17, 1935, P. L. 1130, sec. 1, 15 PS §7505.

As was said in Cella v. Davidson, 304 Pa. 389 (1931):

"It cannot be disputed that a court of equity has no jurisdiction in a case of contested right to the possession of a public office . . . Equity has no power to remove an officer of a private corporation . . . A

court of equity cannot acquire and retain jurisdiction of matters not justiciable before it, such as the removal of corporate officers or the direction of corporate election, through the medium of another matter pleaded within its cognizance but as to which after hearing it does not act and grants no relief. . . .

"Appellees argue that the principle applies that equity having jurisdiction as to part of a controversy will round it out and afford full relief. This principle would apply if the court had proceeded to adjudicate the matter over which it had jurisdiction and as incidental to complete relief in respect to it had disposed of the other matters averred in the bill, but here, as before stated, the court did not act upon the matter which gave it dominion over the case, but only on the incidental subjects over which in themselves it was without power.

"We are of opinion that the Act of June 7, 1907, P.L. 440, has no application to the situation before us. It provides that the question of jurisdiction shall be raised by demurrer or answer so stating and that otherwise the cause shall proceed to final determination with the same effect as if upon hearing before the court without a jury. Here the court had jurisdiction, under one phase of the controversy pleaded, but, until relief was not meted out as to that, the lack of jurisdiction was not manifest. Jurisdiction did not attach to the controversy, as the court below seemed to think it did, under section 13 of the Act of June 16, 1836, P.L. 784, giving courts of equity supervision and control of corporations. This does not bestow jurisdiction as to remedies adequate at law. Where a remedy is provided at law it must be strictly pursued: Williamsport v. Citizens' Water & Gas Co., 232 Pa. 232; United Drug Co. v. Kovacs, 279 Pa. 132."

A further reason for refusing to take jurisdiction

in this matter is found again in the bylaws of the YRP referred to hereinbefore in finding of fact no. 11 whereby it is provided that the procedure for the organization shall be governed by the Constitution, by the Bylaws and by the current edition of Roberts Rules of Order (Revised). Paragraph 60, entitled "Disciplinary Procedures" of Roberts Rules of Order (Revised) provides:

"If the chair at a meeting ignores a motion apparently made and seconded in good faith, and neither states the question on the motion nor rules it out of order, the maker of the motion should raise a *Point of Order* covering the case, and on the chair's decision he can make an *Appeal.* If the chair also ignores the point of order, the member can repeat the motion; and if it is seconded and the chair still ignores it, the maker of the motion can himself put it to a vote standing in his place. If the regular presiding officer of an organized society culpably fails to perform the duties of the chair properly in a meeting, a motion can also be made to censure him, which can be put to a vote by the maker of the motion as just explained, if necessary. If the offending occupant of the chair is not the regular presiding officer of a society, a motion can be made to 'declare the chair vacant and proceed to elect a new chairman.' Such a motion is a question of privilege affecting the assembly.

"Except as the bylaws may provide otherwise, any regularly elected officer of a permanent society can be deposed from office for cause—that is, misconduct or neglect of duty in office—as follows:

"—If the bylaws provide that officers shall serve 'for— years *or* until their successors are elected,' the election of the officer in question can be rescinded and a successor can thereafter be elected for the remainder of the term. The vote required for removing the of-

fender from office in such a case is the same as for any other motion to *Rescind*.

"—If, however, the bylaws provide that officers shall serve *only* a fixed term, such as 'for two years' (which is not a recommended wording; see p. 481), or if they provide that officers shall serve 'for — years *and* until their successors are elected,' an officer can be deposed from office only by following the procedures for dealing with offenses by members outside a meeting; that is, an investigating committee must be appointed, it must prefer charges, and a formal trial must be held."

By specifically incorporating the procedure set forth in Roberts Rules of Order (Revised), the bylaws of the YRP provide a proper and complete method for the removal of the chairman under appropriate circumstances. There is no allegation in the amended complaint filed by plaintiffs nor was there any testimony to support a finding that such procedures had been instituted at any time up to the present. The court of equity will not interfere in the operations of a private nonprofit corporation when the procedures prescribed by the bylaws of that corporation have not been either attempted or followed to a conclusion. It is a basic maxim of equity that a court of equity will not take jurisdiction unless it is shown that plaintiffs have exhausted their legal remedies, which remedies in this instant situation have not yet even been instituted let alone exhausted. In Trainer v. International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada, Local No. 516, et al., 353 Pa. 487 (1946), it was said:

"Courts will not entertain jurisdiction unless all remedies afforded by the By-Laws and Constitution of an association have been exhausted, for it is from

them that the rights of the members are derived and determined."

As was said in Falsetti v. Local Union No. 2026, United Mine Workers of America, 400 Pa. 145 (1960), at page 158:

"The exhaustion rule is beneficial as well to the vast majority of association members. Since very few members are willing to appeal beyond the association level when they are required to exhaust their internal remedies, the majority of members are benefited for the same reasons as the association in having disputes resolved within the association. The rule, when properly applied, will also tend to improve the machinery of the intra-association appellate system and make it a more responsible and efficient means of settling problems of discipline.

"We are fully cognizant of the tremendous burden that premature judicial intervention into internal association-member disputes would place on already over-crowded court dockets. The exhaustion rule reduces litigation by forcing disputes through a private system where they may be settled before reaching the courts. This undoubtedly eliminates a needless waste of judicial time and duplication of litigation. The aggrieved member will quite often obtain satisfaction within the association's hierarchy, thereby terminating the dispute before it ripens into a full-blown legal contest. The rule, in summary, is extremely valuable in encouraging private adjustment, self-correction, and fair internal procedures."

It should be noted that in the amended complaint there is no allegation that resort to the remedies provided by the bylaws of the YRP would be vexatious and futile.

It is settled beyond question that jurisdiction of

subject-matter cannot be acquired by a court either through consent, waiver or estoppel of the parties.[10]

## DECREE NISI

For the reasons stated hereinabove, plaintiffs amended complaint is dismissed by virtue of a lack of jurisdiction of this court in equity to entertain the action.

---

[10] Bell Appeal, 396 Pa. 592, at page 597, (1959).